**MUWEKMA TRIBE, Plaintiff,**

v.

**Bruce BABBITT, Secretary of the United States Department of the Interior, and Kevin Gover, Assistant Secretary for Indian Affairs, United States Department of the Interior, Defendants.**

**No. CIV.A.99–3261(RMU).**

United States District Court, District of Columbia.

Jan. 16, 2001.

Harry Rubenstein Sachse, Sonosky, Chambers, Sachse & Endreson, Washington, DC, for Muwekma Tribe.

Renita Ford, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for Bruce Babbitt.

Renita Ford, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Robert Elijah Jordan, III, Steptoe & Johnson, Wahsington, DC, for Kevin Gover.

*MEMORANDUM OPINION*

URBINA, District Judge.

**Granting the Plaintiff's Motion to Amend the Court's Order**

## I. INTRODUCTION

The Muwekma Tribe is a tribe of Ohlone Indians indigenous to the present-day San Francisco Bay area. In the early part of the Twentieth Century, the Department of the Interior ("DOI") recognized the Muwekma Tribe as an Indian tribe under the jurisdiction of the United States. In more recent times, however, and despite its steadfast efforts, the Muwekma Tribe has been unable to obtain federal recognition, a status vital for the Tribe and its members. Without federal recognition, the Tribe cannot receive the benefits of health care, housing, economic development, and self-governance that the United States provides to federally recognized tribes. *See* Pl.'s Mot. for Summ. J. at 2; 25 C.F.R. § 83.2.

The Muwekma Tribe filed a complaint in this court in December 1999. At that time, the Tribe had been engaged in the recognition process for ten years. Seeking an order compelling the DOI to complete its review within one year, the tribe named two defendants in its suit: Bruce Babbitt, in his official capacity as Secretary of the Interior, and Kevin Gover, in his official capacity as the DOI's Assistant Secretary for Indian Affairs. On June 30, 2000, the court granted partial summary judgment to the plaintiff and directed the defendants to submit a proposed schedule for resolving the plaintiff's petition. *See* Memorandum Opinion dated June 30, 2000 ("Mem. Op."). At length, the court approved the defendants' proposed schedule. *See* Order dated July 31, 2000 ("July Order"). The plaintiff now requests that the court amend the July Order to set a time by which the defendants must *conclude* consideration of the plaintiff's petition, a date the defendants did not include in their proposed schedule. *See* Pl.'s Motion to Amend Order. For the reasons stated herein, the court will grant the plaintiff's motion to amend the July Order.

## II. BACKGROUND

### A. The Federal Recognition Process

Congress has the power under the Indian Commerce Clause and the Treaty and War Powers to recognize Indian tribes. *See* U.S. CONST. art. I, § 8, cl. 3; art. II, § 2, c. 2; *see also Morton v. Mancari,* 417 U.S. 535, 552, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). By delegating authority over Indian affairs to the DOI, *see* 25 U.S.C. §§ 2, 9, Congress has allowed the DOI to assume much of the responsibility for determining which tribes are eligible for a government-to-government relationship with the United States. For many years, the DOI made such determinations on an *ad hoc* basis. *See* 25 Fed.Reg. 39,361 (1978). In 1978, however, the DOI enacted regulations establishing procedures for the acknowledgment of tribes. *See* 43 Fed.Reg. 39,631 (1978) (codified at 25 C.F.R. Part 83). These procedures require the tribe seeking recognition to file a detailed description of its history. *See* 25 C.F.R. § 83.7. If the petitioning tribe can demonstrate previous federal acknowledgment,[1] it need only demonstrate continued tribal existence since the time of prior federal acknowledgment. *See id.* § 83.3(g).

Federal acknowledgment is not a mere procedural formality. To the contrary, without federal acknowledgment, an Indian tribe would not be eligible for numerous federal programs that directly affect the tribe's health and welfare.[2] For example, Congress has established programs and benefits for the education of tribal members in an effort to ameliorate high rates of illiteracy among Indian populations. *See, e.g.,* Indian Self–Determination and Education Assistance Act, 25 U.S.C. §§ 450–458; Tribally Controlled Community College Assistance Act, 25 U.S.C. §§ 1801–1852. Congress has also enacted statutes to provide health services and to construct safe water-supply and water-dis-

1. The DOI defines "previous federal acknowledgment" as "action by the Federal government clearly premised on identification of a tribal political entity and indicating clearly the recognition of a relationship between that entity and the United States." 25 C.F.R. § 83.1.

2. Rosemary Cambra, the Chairwoman of the Muwekma Tribe, describes the impact of the lack of federal recognition on the Tribe:

> The Bureau's failure to extend the benefits and protections to the Tribe that it was entitled to have resulted in damage to the Tribe, our families and our members. We have been forced to maintain our community, our culture, heritage and economy without a land base and without the assistance of the federal government. Most federally recognized tribes barely survived the 20th century with the help of the United States. We had to go it alone. Even more importantly, lack of recognition has deprived us of the dignity of recognition by the United States to which we are entitled as a tribe of Indians and as aboriginal people of California.

Cambra Decl. ¶ 7, Pl.'s Mot. for Summ. J.

posal systems for Indian homes and communities. *See, e.g.,* Indian Health Care Improvement Act, 25 U.S.C. § 1601 *et seq.* Federally recognized tribes benefit from other special general assistance and child welfare programs as well, including the Food Stamp Program, 7 U.S.C. §§ 2011–2036, and the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963. The Muwekma Tribe cannot benefit from these programs, however, if the United States does not officially recognize it as an Indian tribe.

The Tribe's lack of federal recognition also inhibits its ability to practice its religious beliefs in connection with proper treatment of the Tribe's dead. *See* Pl.'s Mot. for Summ. J. at 31. In 1991, Congress enacted the Native American Graves Protection and Repatriation Act to protect Indian remains and cultural items located on tribal and federal lands. The Act establishes the right of tribes to determine the disposition of remains and cultural objects found on tribal and federal lands and to demand repatriation of such items in the possession of a federal agency or museum. *See* 25 U.S.C. §§ 3001, 3002, 3005. By statute, however, only federally recognized tribes enjoy this right. *See* id. § 3001(7). Thus, although a number of museums possess cultural objects and remains of the Muwekma people, the Tribe cannot demand their repatriation until it receives federal acknowledgment. *See* Cambra Decl. ¶ 10.

**B. The Muwekma Tribe's Efforts to Obtain Federal Recognition**

The Muwekma Tribe commenced the recognition process on May 9, 1989, when it forwarded a letter of intent to file a petition for acknowledgment with the BIA's Branch of Acknowledgment and Research ("BAR"). *See* Pl.'s Mot. for Summ. J. at 8; 25 C.F.R. § 83.4. Thereafter, in accordance with 25 C.F.R. § 83.7, the Muwekma Tribe commissioned historians, anthropologists, and genealogists to prepare a detailed report on the history of the Tribe. *See* Compl. ¶ 11. This report formed the basis of the Tribe's petition for acknowledgment as a federally recognized Indian tribe, which it submitted to the BAR on January 24, 1995. *See* id. On April 6, 1995, after reviewing the Tribe's submission, the BAR forwarded a letter to the Tribe suggesting what was needed to convert their "preliminary effort into a fully documented petition." *See* Fleming Decl. dated Feb. 22, 2000 ("Fleming Decl."). Reasoning that the Tribe had not yet submitted a complete petition, the BAR stated that its letter should "not be considered as the formal technical assistance review of a documented petition which is required by the acknowledgment regulations (25 C.F.R. § 83.10(b)(2))." *See* id. The BAR added that the Tribe's petition was "very informative" and "well on its way to completion." *See* id.

The Tribe responded to the BAR's suggestions by submitting additional information in July and August 1995. *See* Pl.'s Mot. for Summ. J. at 8. The Tribe then requested from the BAR a ruling that the DOI had previously acknowledged the existence of the Muwekma Tribe.[3] *See* id. The BAR did not respond until May 24, 1996, when it determined that the Muwekma Tribe had previously been recognized as the Pleasanton or Verona Band. *See* Compl. ¶ 11. Shortly thereafter, the Tribe met with BAR staff, Congresswoman Zoë Lofgren, and others to discuss the outstanding petition. *See* Fleming Decl. ¶¶ 22–23. At this meeting, the Tribe submitted additional information in support of its petition. *See* Pl.'s Mot. for Summ. J. at 9. The Tribe also wrote Ada Deer, Assis-

---

**3.** The plaintiff explains that although the DOI had recognized it as the Verona Band in the early part of the Twentieth Century, at some point the DOI ceased dealing with and providing benefits to the Muwekma Tribe. *See* Cambra Decl. ¶ 6. The plaintiff adds that its historical research has not turned up any "evidence of a formal decision made by the Bureau to cease recognizing the Tribe or that the Tribe was ever consulted by the Bureau in this regard." *Id.*

tant Secretary of the Interior, to request "clear and concise time tables and responses to Muwekma's petition." *See* Fleming Decl. ¶ 25 and Ex. 15.

On October 10, 1996, the BAR sent the Tribe a "technical assistance letter" advising the Tribe of deficiencies in its petition and requesting additional information. *See* Pl.'s Mot. for Summ. J. at 10. By this time, 385 days had passed since the Tribe's initial submission. *See id.* On March 26, 1997, in response to the BAR's technical assistance letter, the Tribe submitted additional information. On June 30, 1997, the BAR issued a second technical assistance letter advising the Tribe of deficiencies in its petition and requesting additional information. *See* Compl. ¶ 11. The Tribe submitted a second set of additional information on January 16, 1998. *See* Fleming Decl., Ex. 23. The following month, the Tribe requested that the BAR place its petition on the "ready, waiting and active list." *See* Fleming Decl., Ex. 24.

On. March 26, 1998, more than three years after the Tribe first filed its petition, the DOI notified the Tribe that the· BIA was "placing the Muwekma petition on the *ready for* active consideration list on March 26, 1998. The petition will be evaluated in turn, after the petition of the Southern Sierra Miwok Nation."[4] *See* Fleming Decl. ¶ 36 (emphasis added). Having received this notice, the Tribe hoped that the BIA would finally consider its petition, but again nothing happened. *See* Pl.'s Mot. for Summ. J. at 11. Indeed, on June 19, 1999, in response to a congressional inquiry, defendant Gover indicated that ten tribes were ahead of the plaintiff on the "ready" list and fifteen tribes were under "active consideration." *See* Fleming Decl., Ex. 15. Defendant Gover also indicated that "it may take two to four years before the petition will be reviewed." *Id.* By contrast, in its motion for summary judgment, the Muwekma Tribe estimated that without the court's intervention, the Tribe could wait 20 years for final review of its petition. *See* Pl.'s Mot. for Summ. J. at 11.

## C. The Court's Ruling that the Defendants Violated the Administrative Procedure Act

On March 14, 2000, the Muwekma Tribe filed a motion for summary judgment on the ground that the instant case presented no genuine issue of material fact and that the Tribe was entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). Specifically, the Tribe requested an order directing the defendants, through the BIA, to conclude their consideration of the Tribe's petition for acknowledgment within one year of the court's order. The defendants filed a cross-motion to dismiss the complaint, or in the alternative, for summary judgment, on the ground that the court lacked subject-matter jurisdiction.

The Administrative Procedure Act ("APA") requires agencies to "proceed to conclude a matter presented to it" within a reasonable time. 5 U.S.C. § 555(b). It also confers on courts the authority to "compel agency action unlawfully withheld or unreasonably‿ delayed." 5 U.S.C. § 706(1). These two provisions of the APA formed the basis for the Muwekma Tribe's motion for summary judgment. Specifically, the Tribe argued that the defendants had unreasonably delayed review of the Tribe's petition under the APA, and that the court should order the defendants to resolve the Tribe's petition within a one-year period. *See generally* Pl.'s Mot. for Summ. J.

Weighing the factors set forth in *TRAC v. FCC,* 750 F.2d 70 (D.C.Cir.1984), the court determined that the DOI had violat-

---

4. The plaintiff originally contended that its petition had been pending since May 1989, when it first filed its letter of intent with the BIA. In its Memorandum Opinion, the court concluded that the plaintiff's petition has been pending only since March, 26, 1998, when it was placed on the list of tribes "ready for active consideration." *See* Mem. Op. at 12.

ed the APA by unreasonably delaying the Muwekma Tribe's petition for federal recognition. *See* Mem. Op. at 21. Indeed, the court concluded that the defendants' extensive delay in processing the Tribe's petition was "unjustifiable." *See id.* At the same time, the court expressed concern that compelling the agency to assign top priority to the Muwekma Tribe would have an inequitable effect on other tribes awaiting federal recognition. *See id.* For these reasons, the court declined to impose the ultimate relief sought in the plaintiff's complaint, which was an order for the defendants to resolve the petition within one year of the court's order. *See id.* Instead, the court directed the defendants to propose, by July 28, 2000, a schedule for "resolving" the plaintiff's petition. *See id.* The court added that "[s]uch a timetable should reflect consideration of this court's view that this matter implicates health and human welfare issues requiring reasonably *prompt* attention." *Id.* (emphasis in original). Finally, the court stated that it did not, by its ruling, "intend to mandate that the agency act within a prescribed time frame at this point. However, a deadline is in order and the agency is directed to propose one consistent with this opinion and APA § 706(1)." *See id.* at 22.

## D. The Defendants' Proposed Schedule for Resolving the Plaintiff's Petition

On July 28, 2000, the defendants submitted a proposed schedule for resolving the Muwekma Tribe's petition for federal recognition. The defendants proposed a waiver policy—a "fast track"—for considering petitions of tribes that, like Muwekma, had previously been recognized in the Twentieth Century. *See* Notice at 1–2 (July 28, 2000). In a letter submitted to the court on July 28, 2000, the Assistant Secretary explained that under this waiver policy:

> [the BIA] would agree to place promptly on active consideration any petitioner on the Ready list which establishes . . . un-

der 25 C.F.R. § 83.8 that it had prior Federal recognition after 1900 and that its current members are representative of and descend from that previously recognized tribal entity. . . . [S]uch petitions could be completed more quickly and we believe that the Bureau can consider such petitioners promptly without significantly delaying the consideration of other petitioners on the active consideration list. . . . Therefore, we can justify such a waiver policy as in the best interest of the Indians because it will ultimately move the entire process along for all petitioners.

*Id.* at 1. Thus, although there were ten tribes placed on the ready list before the Muwekma Tribe, the defendants agreed to "waive" the requirement in subsection 83.10(d) that petitions be placed on active consideration in the same order that they were placed on the ready list. *See id.* The defendants further submitted that they needed ninety days to determine if the members of the Muwekma tribe are descendants of the previously recognized tribe. Assuming they made an affirmative determination, the defendants pledged that they would "commit to placing the Muwekma petition on active consideration within one year of determining that the documentation is responsive." *See id.* at 3.

On July 31, 2000, the court issued an order approving the defendants' proposed schedule. *See* July Order. Shortly thereafter, the plaintiff filed two motions to amend the July Order. In the first motion, the plaintiff requested that the court set a time after "active consideration" begins by which the defendants must resolve the plaintiff's petition. *See* Mot. to Amend dated Aug. 2, 2000 at 1. The plaintiff pointed out that the defendants' letter suggested a process by which the DOI may *begin* active consideration, but no date by which it would *end* such consideration, thereby undermining the court's requirement that the defendants submit a "deadline" and a proposed schedule "for *resolving* the plaintiff's petition." *See id.* at 3 (emphasis in

original) (citing Mem. Op. at 21). The plaintiff further noted that without an end date, it is still possible for the petition to "languish in the review process indefinitely." [5] *See id.* (citing Mem. Op. at 17).

In its Amended Motion to Amend, the plaintiff suggested that under the defendants' proposed schedule, it would be well into 2003 (at best) before Muwekma would receive a final order from the DOI on its petition. *See* Amended Mot. to Amend dated Aug. 4, 2000 at 1, 2. The plaintiff maintained that if the DOI found the Muwekma eligible for "fast track" treatment, it should be required to issue a final ruling on Muwekma's petition within one year of that finding. *See id.* at 2. In sum, the plaintiff sought two changes to the court's order: first, that the DOI be given a set date for a final ruling, not just a date for beginning active consideration, and second, that the final ruling contemplated in 25 C.F.R. § 83(10) be issued within one year of the DOI's finding that Muwekma belongs on the fast track, or by October 31, 2001. *See id.; see also* Pl.'s Supp. Brief at 3.

### E. The DOI's Determination that Muwekma's Documentation Was Responsive to Prior Technical Assistance Letters

In its July Order, the court ordered the BAR to determine, within 90 days, whether the Muwekma Tribe's documentation was sufficiently responsive to satisfy issues raised in prior technical assistance letters. Specifically, the court ordered the BAR to determine whether the documentation showed that current members of the Tribe are representative of and descend from a previously recognized tribal entity such that review of the petition may proceed under 25 C.F.R. § 83.8. On October 30, 2000, the defendants filed a notice advising the court that they had determined that the Muwekma Tribe descends from and is representative of a tribe previously recognized by the United States. *See* Notice dated October 30, 2000 ("October Notice"). The defendants further advised the court that "[p]ursuant to the Court's instructions, the Muwekma Tribe's petition will be placed on active consideration within the next twelve months." *Id.*

## III. LEGAL ANALYSIS

### A. Standard of Review

The plaintiff seeks to amend the July Order, in which the court instructed the BAR to place the Muwekma Tribe on active consideration within one year of finding that the Tribe's documentation is responsive to prior technical assistance letters. The plaintiff argues that Rule 59(e) of the Federal Rules of Civil Procedure provides the proper legal standard for its motion to amend, *see* FED. R. CIV. P. 59(e), while the defendants respond that the court must treat the plaintiff's motion as a Rule 60(b) request for "Relief from Judgment or Order," because there has been no judgment in the instant case. *See* FED. R. CIV. P. 60(b).

By its terms, Rule 60(b) encompasses a motion filed in response to an *order* or judgment, while Rule 59(e) contemplates motions to alter or amend a judgment only. *See* Wright & Miller, 11 FED.

---

**5.** The plaintiff notes that the DOI has three cases that have been on active consideration for six to nine years without any resolution. *See* Mot. to Amend at 3. The United Houma Nation has been on active consideration for nine years, the Duwamish Indian Tribe for eight years, and the Chinook Indian Tribe for six years. *See id.* Although the DOI attributes these lengthy delays to the Indian tribes' requests for extensions, *see* Opp'n to Mot. to Amend at 5, the plaintiff points out that the defendants' claims are misleading. For ex-

ample, of the eight years of delays since active consideration began in the Houma Tribe case, the Tribe's requests for extensions have accounted for a delay of only two-and-a-half years. *See* Pl.'s Reply in Support of Mot. to Amend at 3. In the case of the Duwamish Tribe, less than one-and-a-half years of the seven-year delay can be attributed to the petitioner. *See id.* at 4. Finally, of the five years of delay in resolving the petition of the Chinook Indian Tribe, only seven months can be attributed to the petitioner. *See id.*

PRAC. & PROC. CIV.2D § 2851. Accordingly, Rule 59(e) does not provide the proper legal standard in this matter. For Rule 60(b) to apply, however, the order in question must have been final. *See UMWA 1974 Pension Trust v. Pittston Co.*, 793 F.Supp. 339, 344 (D.D.C.1992) (Rule 60(b), by its terms, applies only to final judgments and orders). "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Bundinich v. Becton Dickinson and Co.*, 486 U.S. 196, 199, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). The order at issue in the instant matter was final in that it disposed of all the issues raised in the complaint (namely, the defendants' delay in acting on the petition) as to all the parties to the suit.[6]

Rule 60(b)(1) authorizes the court to give relief from a judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect." *See* FED. R. CIV. P. 60(b)(1). The D.C. Circuit has written that the "district judge, who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion, and the district court's grant or denial of relief under Rule 60(b), unless rooted in an error of law, may be reversed only for abuse of discretion."

*Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138 (D.C.Cir.1988).[7]

## B. Discussion

At the core of this dispute is the proper interpretation of the court's order that the defendants propose a schedule for "resolving" the plaintiff's petition. *See* Mem. Op. at 21–22. The full text of the relevant language of the court's Opinion is as follows:

> The court agrees that directing the defendant to complete a review of the plaintiff's petition within twelve months may hasten review at the undue expense of other tribes. Moreover, compelling the agency to assign the plaintiff top priority may produce an inequitable result. However, this court concludes that the defendants' extensive delay in processing the plaintiff's petition is unjustifiable and without good reason. For these reasons, the court declines to impose upon the parties a "hard deadline," but in the interest of fairness directs the agency to submit by July 28, 2000 a proposed schedule for resolving the plaintiff's petition. Such a timetable should reflect consideration of this court's view that this matter implicates health and human welfare issues requiring reasonably *prompt* attention.

*Id.* at 21 (emphasis in original). The court further instructed:

> trict court has jurisdiction over an action, it has complete power over interlocutory orders therein and may revise them when consonant with equity).

6. Assuming *arguendo* that the court were to find that the order in question was not final, the court would not be constrained by Rule 59(e) or Rule 60(b). This is because motions for reconsideration of *interlocutory* orders, in contrast to motions for reconsideration of final orders, are within the sound discretion of the trial court. *See United Mine Workers v. Pittston Co.*, 793 F.Supp. 339, 344–45 (D.D.C. 1992), *aff'd*, 984 F.2d 469 (D.C.Cir.); *see also* FED. R. CIV. P. 60(b) Advisory Comm. Notes ("interlocutory judgments are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires"); *Schoen v. Washington Post*, 246 F.2d 670, 673 (D.C.Cir.1957) (Burger, J.) (so long as a dis-

7. Before the 1948 amendment to the Federal Rules of Civil Procedure, relief on these grounds was provided only if the moving party himself had made the mistake. No relief could be afforded for the similar defaults of the court or even of the party's agents. The amended rule dropped the limiting pronoun "his" in order to permit relief for the mistake or neglect of others. *See* 11 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, FED. PRAC. & PROC.2D § 2858.

The plaintiff requests an order compelling review of its petition in twelve months. However, this court may address unreasonable delay by means less intrusive than mandamus. The court thus directs the agency to submit to the court by July 28, 2000 a proposed schedule for resolving the plaintiff's petition. The court does not, by its ruling, intend to mandate that the agency act within a prescribed time frame at this point. However, a deadline is in order and the agency is directed to propose one consistent with this opinion and APA § 706(1).

*Id.* at 22 (footnote omitted). The plaintiff argues that the court's language must be interpreted as instructing the defendant to propose a schedule for *concluding* consideration of the petition. *See* Pl.'s Reply in Support of Amended Mot. to Amend at 1–2. The defendants respond that the court never ordered the DOI to establish a hard deadline by which active consideration would be completed. *See* Defs.' Opp'n. to Mot. to Amend at 2; Defs.' Supp. Brief at 3–4. The defendants also argue that such a deadline is unnecessary because the DOI's own regulations already contain a time frame within which findings, comments, and final disposition of a petition on active consideration are to occur. *See* Defs.' Opp'n to Mot. to Amend at 3. The court will consider each of these arguments in turn.

Trial courts are in the best position to interpret their own orders and are entitled to inherent deference when they construe those orders. *See, e.g., Vaughns v. Board of Education,* 758 F.2d 983, 989 (4th Cir. 1985); *Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th Cir.1997); *Hastert v. Illinois State Bd. of Election Commissioners,* 28 F.3d 1430, 1438 (7th Cir.1993). In the instant matter, the court determined that the defendants had violated section 706(1) of the APA and instructed the defendants to submit a proposed schedule for "resolving" the plaintiff's petition. *See* Mem. Op. at 21–22. Although the court's order admittedly declined to impose a

"hard deadline," it did provide that a "deadline is in order." By "deadline," the court contemplated a resolution of the plaintiff's petition, and by "resolution," the court contemplated a date for the *completion* of the plaintiff's petition. It was only by inadvertence that the court approved the defendants' proposed schedule without ensuring that it complied fully with the court's order. *Cf.* FED. R. CIV. P. 60(b)(1) (court may relieve a party from an order on the basis of mistake or inadvertence).

A review of the court's Memorandum Opinion indicates that it would be inconsistent to interpret the Opinion as intending anything but a date by which the defendants must *complete* review of the plaintiff's petition. First, the court specifically ruled that the lack of a clear end date for processing the plaintiff's petition violated section 706(1) of the APA. *See* Mem. Op. at 12. As the court stated; "the agency's two-to-four year estimate [before which it would begin consideration] does not commit any form of agency action, but rather suggests that there is no clear end in sight to the processing of the plaintiff's petition." *Id.* at 12–13. Second, the court noted that "the defendants' refusal to provide the plaintiff with a *definite* time frame for review of its petition does not enable the court to evaluate any prospect of completion.... This ambiguity defeats any assertion that the process proceeds with reasonable dispatch." *Id.* (emphasis added). Thus, the lack of a *clear* end date or a commitment to a *definite* time frame by which the defendants would complete the review process and issue a final decision was central to the court's holding that the defendants had violated the APA. *See* Mot. to Amend at 2.

Nevertheless, in their supplemental brief, the defendants insist on an interpretation that would excuse them from providing a date for completion of the plaintiff's petition. Not only are the defendants' arguments erroneous, but they are glaringly disingenuous as well. For example, in

their supplemental brief, the defendants argue that the court did not compel the DOI to act in a manner that would entail establishing a final date for resolution of the plaintiff's petition. *See* Defs.' Supp. Brief at 4. The defendants quote the court's ruling as follows:

> The Court stated that it
>
> "agrees that directing the defendant to complete a review of the plaintiff's petition within twelve months may hasten review at the undue expense of other tribes. Moreover, compelling the agency to assign the plaintiff top priority may produce an inequitable result. . . . For these reasons, the Court declines to impose upon parties a 'hard deadline.'"

Defs.' Supp. Brief at 4 (citing Mem. Op. at 21). In the ellipsis preceding the final sentence of the quote, the defendants omit a key sentence from the court's opinion: "However, this court concludes that the defendants' extensive delay in processing the plaintiff's petition is unjustifiable and without good reason." With the deliberate omission of this sentence, the defendants attempt to portray the court's opinion as directing a profoundly different result than the court intended.

Similarly, the defendants' misquote another portion of the court's opinion. The defendants' supplemental brief reads, in pertinent part:

> that "the court does not by its ruling, intend to mandate that the agency act within a prescribed time frame" because to do so "may hasten review at the undue expense of other tribes."

Defs.' Supp. Brief at 4 (citing Mem. Op. at 21–22) (emphasis from Defs.' Supp. Brief omitted). In fact, the court stated that it did not intend to mandate that the agency "act within a prescribed time frame *at this point.*" *See* Mem. Op. at 22 (emphasis added). One page earlier in the Opinion, the court noted that "directing the defendant to complete a review of the plaintiff's petition within twelve months may hasten review at the undue expense of other tribes." *Id.* at 21. By injecting the word "because" in between two separate, nonconsecutive parts of the court's opinion, the defendants proffer a misleading interpretation of the court's opinion that is contrary to the court's intent.

Finally, it is true, as the defendants point out, that the DOI's regulations provide a timetable in which the BIA is to reach a final disposition of a petition on active consideration.[8] *See* Defs.' Opp'n to Mot. to Amend at 2–3. The defendants argue that because such a timetable exists, the court need not order the DOI to complete active consideration by a hard deadline. *See id.* The defendants' arguments fail for two reasons, however. First, the regulations do not provide a clear or definite end date for resolution of the plaintiff's petition. To the contrary, the regulations allow for regular extensions of time in the *active consideration* process. *See id.* at 4; Pl.'s Reply in Support of Amended Mot. to Amend at 3; 2d Fleming Decl. ¶¶ 5–10. More importantly, the court has already determined that the defendants violated the APA, a ruling the defendants have not questioned. Specifically, the court ruled that the prior recognition of

---

**8.** The regulations provide that the Assistant Secretary—Indian Affairs (AS–IA) must issue a proposed finding within one year of placing a petitioner on active consideration. *See* 25 C.F.R. § 83 .10(h). After publication of the proposed findings in the Federal Register, the petitioner and any other individual or organization have 180 days to submit arguments and evidence to rebut or support the proposed finding. *See id.* § 83.10(i). This comment period may be extended for up to an additional 180 days at the AS–IA's discretion, upon a finding of good cause. *See id.* The

petitioner has a minimum of 60 days to respond to any submissions by interested and informed parties, and this response period may also be extended at the AS–IA's discretion if warranted by the nature and extent of the comments. *See id.* § 83.10(k). Once the comment period has closed, the AS–IA must consult with the petitioner and interested parties to determine an equitable time frame for consideration of written arguments and evidence submitted during the comment period. *See id.* § 83.10(1).

the Muwekma Tribe, and its removal from recognized status without a formal decision, defeated any "rule of reason" in making Muwekma wait as long as it has had to wait. *See* Mem. Op. at 13, 21. Thus, whether or not the DOI's regulations contain a timetable for resolving the plaintiff's petition is irrelevant. In holding that the defendants violated the APA, the court acted to compel agency action, so that the agency could *rectify* the past delay, not so that the agency could continue to proceed on· an already delayed course of action.

## IV. AMENDMENT AND CLARIFICATION OF COURT'S JULY ORDER

In light of the foregoing discussion, the court will clarify its July Order with the following modifications. Specifically, the court directs the parties to proceed as follows:

1. in light of the defendants' October Notice, the BAR shall place the Muwekma Tribe's petition for federal recognition on active consideration no later than February 12, 2001; the defendants shall also inform the court in writing within seven business days that they have placed the plaintiff's petition on active consideration;

2. the defendants shall make a final determination on plaintiff's status as an Indian tribe no later than March 11, 2002; the defendants' review and consideration of the plaintiff's petition for recognition shall be conducted in accordance with the provisions of 25 C.F.R. § 83.10, except that it shall conform to the following requirements:

   a. the defendants shall issue proposed findings, as contemplated in 25 C.F.R. § 83.10(h), no later than July 30, 2001;

   b. the defendants shall, as contemplated in 25 C.F.R. § 83.10(i), invite the petitioner and other third parties to submit comments on the proposed findings no later than October 29, 2001. As contemplated in 25 C.F.R. § 83.10(j), during the comment period the Muwekma Tribe shall have the right to technical advice and a formal meeting with staff of the BAR and research and other staff of the defendants who participated in the preparation of the proposed ruling to inquire into the reasoning, analysis, and factual basis for the proposed decision and to review all records relied on for the proposed decision;

   c. as contemplated in 25 C.F.R. § 83.10(k), the Muwekma Tribe shall have until December 27, 2001 to respond to any comments submitted by third parties; and

   d. the final determination contemplated in 25 C.F.R. § 83.10(1)(2) and (m) shall be issued by the defendants by March 11, 2002; the defendants shall also inform the court in writing within seven business days that they have issued a final determination.

## V. CONCLUSION

For the foregoing reasons, the court will grant the plaintiff's Motions to Amend the court's order dated July 28, 2000. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed and issued on this 16th day of January, 2001.