AMERICAN LANDS ALLIANCE,
et al., Plaintiffs,

v.

Gale A. NORTON, Secretary of the
Department of the Interior, et
al., Defendants.

No. CIV.A. 00–2339RBW.

United States District Court,
District of Columbia.

May 13, 2003.

Amy Lands Atwood, Eugene, OR, Ari Micha Wilkenfeld, Bernabei and Katz, PLLC, Washington, DC, Courtney Brown, Portland, OR, Michael Axline, Eugene, OR, Heather Brinton, Eugene, OR, for Plaintiffs.

Katherine W. Hazard, U.S. Department of Justice Environment & Natural Resources Division Appellate Section, Mauricia Maria Magdalena Baca, U.S. Department of Justice Environment & Natural Resources, Seth M. Barsky, U.S. Department of Justice Wildlife & Marine Resources Section, Enrd, Washington, DC, for Defendants.

### ORDER

WALTON, District Judge.

This matter is now before the Court on the Defendants' Motion for Reconsideration ("Defs.' Mot.") of the Court's January 30, 2003 Memorandum Opinion and Order granting summary judgment to the plaintiffs in this case. *See Am. Lands Alliance v. Norton*, 242 F.Supp.2d 1 (D.D.C.2003). In its January 30, 2003 Opinion, the Court found that the defendants had violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, *et seq.* (2000), by failing to make the mandatory findings required by 16 U.S.C. § 1533(b)(3), and required that

the defendants issue and publish in the Federal Register their finding as to whether the Gunnison sage grouse qualifies for ESA listing. *See Am. Lands*, 242 F.Supp.2d at 8–12. In addition, the Court found that the United States Fish and Wildlife Service's ("FWS") Petition Management Guidance ("PMG") Policy, that treats public petitions as "redundant" if a species has already been placed on FWS's candidate list pursuant to its internal process, violates the ESA's "notice and comment" requirement embodied in 16 U.S.C. § 1533(h) and therefore is procedurally flawed. *See Am. Lands*, 242 F.Supp.2d at 12–15. Finally, the Court concluded that the FWS's PMG Policy is facially invalid because it allows the defendants to avoid the mandatory, non-discretionary obligations of 16 U.S.C. § 1533(b)(3)(B) of the ESA. *See Am. Lands*, 242 F.Supp.2d at 15–18. The defendants now seek reconsideration of the Court's findings that the defendants violated the ESA by failing to issue a 90–day substantial information finding and that the PMG Policy facially violates 16 U.S.C. § 1533(b)(3)(B) of the ESA based upon the position that "the court's opinion appears to be premised on an erroneous assumption that issuance of a candidate notice is tantamount to indefinitely postponing the required 12–month finding under section 4(b)(3)(B) of the ESA, 16 U.S.C. § 1533(b)(3)(B)." [1] Defs.' Mot., Defendants' Memorandum in Support of Motion for Reconsideration ("Defs.' Mem.") at 2. The defendants explain that "[r]ather, the Service's position is that a properly documented candidate notice serves as both the required 90–day finding and a 12–month warranted but precluded finding[, which is] in compliance with ESA

---

1. While "not conced[ing] that the PMG was in violation of the 'notice and comment' provisions of the ESA," the defendants do not challenge this finding. Defs.' Mot., Defendants' Memorandum in Support of Motion for Reconsideration ("Defs.' Mem.") at 1 n. 2. Therefore, the Court needs not address its earlier finding that the PMG policy violates the ESA's "notice and comment" requirement embodied in 16 U.S.C. § 1533(h).

section 4(b)(3)(B)(iii)" and note that "in the intervening period since summary judgment briefing, the service has published two Candidate Notices of Review ("CNORs") in which it has made explicit 12–month findings of 'warranted but precluded' regarding the Gunnison sage grouse." *Id.*

Based upon this additional information that was not before the Court when it issued its initial opinion in this case, the Court will now vacate its order requiring that the defendants publish the findings mandated by 16 U.S.C. § 1533(b)(3) because the defendants have already published what purportedly amounts to a 12–month "warranted but precluded" finding. However, the Court will deny the defendants' request to reconsider its ruling that the FWS's PMG Policy, which treats public petitions as "redundant" if a species has already been placed on its candidate list pursuant to its internal process, is facially invalid because it allows the defendants to avoid their obligations mandated by 16 U.S.C. § 1533(b)(3)(B) of the ESA.

## I. *Standard of Review*

 The Court must consider the defendants' motion for reconsideration under Federal Rule of Civil Procedure 60(b).[2] A final judgment or order is one "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment[,]" *Muwekma Tribe v. Babbitt,* 133 F.Supp.2d 42, 48 (D.D.C.2001) (quoting *Budinich v. Becton Dickinson and Co.,* 486 U.S. 196, 199, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (citation omitted)), as it "dispose[s] of all the issues raised in the complaint[,]" *Muwekma Tribe,* 133 F.Supp.2d at 48. Here, the only thing left for the Court to do after it issued its January 30, 2003 Opinion and Order was to conduct a hearing to determine the amount of time the defendants' would be given to comply with the Court's Order and whether to impose attorneys fees and costs against the defendants. As neither one of these remaining matters relate to the merits of this lawsuit, the Court's Opinion and Order amounted to a final judgment and order. The Court will therefore consider the defendants' requests under Rule 60(b)(6), which permits a party to seek reconsideration "within a reasonable time" from a final judgment or order for "any reason justifying relief from the operation of the judgment."[3] *See* Defendants' Reply Memorandum in Support of Motion for Reconsideration ("Defs.' Reply") at 5 (defendants acknowledge that if Rule 60(b) standards apply then subsection (6) is applicable).

## II. *Legal Analysis*

(A) ***Did the Defendants Violate the ESA by Failing to Issue a 90–Day Finding in Response to the Plaintiffs' Petition to List the Gunnison Sage Grouse?***

In its January 30, 2003 Memorandum Opinion, the Court found that the defendants violated 16 U.S.C. § 1533(b)(3)(A) when they failed to publish a preliminary

---

**2.** The defendants are precluded from asking for relief under Federal Rule of Civil Procedure 59(e), as they were required to request such relief "no later than 10 days after entry of the judgment." Here, the defendants' motion was not filed until 46 days after the Court's January 30, 2003 Opinion and Order were issued.

**3.** As the *Muwekma Tribe* Court noted "[a]ssuming *arguendo* that the court were to find that the order in question was not final, the court would not be constrained by Rule 59(e) or Rule 60(b). This is because motions for reconsideration of *interlocutory* orders, in contrast to motions for reconsideration of final orders, are within the sound discretion of the trial court." 133 F.Supp.2d at 48 n. 6 (citations omitted) (emphasis in the original).

substantial information finding. *Am. Lands,* 242 F.Supp.2d at 12. The Court reached this conclusion because while the "Notice of Designation of the Gunnison Sage Grouse as a Candidate Species[,]" 65 Fed.Reg. 82,310 (Dec. 28, 2000), "may contain the substantive equivalent of what would be contained in a substantial information finding, it is not functionally equivalent because it has allowed the defendants to avoid compliance with their mandatory, non-discretionary duty to make a 12–month finding pursuant to 16 U.S.C. § 1533(b)(3)(B)." 242 F.Supp.2d at 12. The Court therefore held that while it would "not require the defendants [to] issue a 90–day substantial information preliminary finding . . . it [would] require the defendants to expeditiously issue a 12–month finding . . ." *Id.*

Now, for the first time, the defendants assert that they have already complied with § 1533(b)(3)(B) by issuing two CNORs, which they claim are the equivalent of 12–month "warranted but precluded" findings. *See* Defs.' Mem. at 8 (citing 66 Fed.Reg. 54,808 (Oct. 30, 2001); 67 Fed.Reg. 40,657 (June 13, 2002)). As justification for not informing the Court earlier about the publication of these CNORs, the defendants claim that the 12–month finding "was not put at issue by the Plaintiffs in their Amended Complaint." *Id.* at 5. In response to this claim, the plaintiffs state that the defendants' justifications "are not accurate" because "[w]hether Defendants *had* made, and whether Defendants' were *required* to make, a 12–month finding on Plaintiffs' petition, was at issue throughout the parties' briefing on their cross motions for summary judgment." Plaintiffs' Opposition to Defendants' Motion for Reconsideration ("Pls.' Opp'n") at

3–4 (citing numerous excerpts from the plaintiffs' filings indicating that the defendants failed to issue both the 90–day and 12–month findings). The Court must agree with the plaintiffs' position because the essence of their position has been that the defendants' PMG policy permitted the FWS to ignore their obligation to comply with both § 1533(b)(3)(A) (90–day finding requirement) and § 1533(b)(3)(B) (12–month finding requirement). Thus, for the defendants to assert that § 1533(b)(3)(B) was not implicated by the plaintiffs' allegations in their Amended Complaint is simply erroneous.

■ However, while the Court is troubled that the defendants failed to file a supplemental brief wherein the Court was apprized of the new information about the CNORs,[4] it will vacate its order requiring the defendants to file a 12–month finding. This result is necessary because the FWS has purportedly now made a "warranted but precluded" 12–month finding, which is what this Court ordered it to do. If the plaintiffs desire to substantively challenge this finding on the grounds that it fails to comply with § 1533(b)(3)(B), they must do so in a separate action, *see* 16 U.S.C. § 1533(b)(3)(C)(ii) (stating that "warranted but precluded" findings are subject to judicial review), as such a challenge was not raised in this action.

**(B)** *Does the PMG Policy Facially Violate 16 U.S.C. § 1533(b)(3)(B) of the ESA?*

This Court concluded that the PMG Policy facially violates 16 U.S.C. § 1533(b)(3)(B) because the PMG Policy treats public petitions to list a species under the ESA as "redundant" if the species has already designated as a candidate for

---

**4.** The plaintiffs aptly point out that the parties submitted supplemental briefs on new authority in March and April of 2002 and the defendants failed to disclose this additional information at that time.

listing pursuant to the FWS' internal process. *Am. Lands,* 242 F.Supp.2d at 15–18. The relevant language of the PMG Policy on this subject states that:

[a] petition for a candidate species for which the Fish and Wildlife Service has lead, inasmuch as the Service has already made a decision regarding the species status and assigned it a listing priority, the Service considers such candidate species as under petition and covered by a 'warranted but precluded' finding under Section 4(b)(3)(B)(iii) of the Act. Therefore, a petition to list a candidate species is redundant and will be treated as a second petition.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross–Motion for Summary Judgment, Exhibit ("Ex.") 1, Ex. 1 at 5 ("Endangered Species Petition Management Guidance"). The Court came to its conclusion that the PMG Policy facially violated section 1533(b)(3)(B) because the policy allows the FWS to ignore its "mandatory, nondiscretionary duty" to make a 12–month finding in accordance with section 1533(b)(3)(B) of the ESA. *Am. Lands,* 242 F.Supp.2d at 15–18. By essentially treating the petition process as duplicative of the internal process, the PMG Policy ignores the fact that Congress not only "intended the petitioning process to *'interrupt*[ ] the department's priority system by requiring *immediate* review[, of the species that is the subject of the petition]' " *Am. Lands,* 242 F.Supp.2d at 18 (quoting *Ctr. for Biological Diversity,* 254 F.3d at 840) (quoting H.R. Conf. Rep. No. 95–1625, at 5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 9453, 8455 (emphasis added)), but that it also placed

certain additional obligations on the FWS when a petition is filed. *See* 16 U.S.C. § 1533(b)(3)(B).

The defendants basically take the position that no harm is done by treating public petitions as "redundant" because petitions for listing are given the same treatment under its internal candidate process and, as proof of this alleged reality, the FWS now points to the two CNORs published after the Ninth Circuit's Opinion in *Ctr. for Biological Diversity v. Norton,* 254 F.3d 833 (9th Cir.2001). In *Ctr. for Biological Diversity,* which this Court relied upon, the Ninth Circuit concluded that the PMG Policy violated the requirements of the ESA because: (1) the Policy allows the FWS to avoid publishing a substantive explanation regarding why a species is "warranted but precluded;" (2) the lack of a substantive explanation precludes meaningful judicial review; and (3) it allows the FWS to avoid mandatory deadlines. 254 F.3d at 838–40. In an attempt to address the concerns raised by the Ninth Circuit, the two recent CNORs include "a description of why the listing of every petitioned candidate species is both warranted and precluded at this time." 66 Fed.Reg. at 54,815; 67 Fed.Reg. at 40,664. In addition, the FWS states that the "warranted but precluded" finding "together with the administrative record for the decision at issue, will provide an adequate basis for a court to review the petition finding." *Id.* Finally, the FWS states that "nothing in this document or any of our policies should be construed as in any way modifying the Act's requirement that we make a new 12–month petition finding for each petitioned candidate within one year of the date of publication of this CNOR." *Id.*[5]

---

5. While the Court is not faced with a challenge to whether these CNORs comply with 16 U.S.C. § 1533(b)(3)(B), it has concerns about whether the FWS is fully complying

with the statute's requirements when it makes a finding that a listing is "warranted but precluded." Specifically, this Court, quoting the *Ctr. for Biological Diversity* Court, has

However, this Court must agree with the plaintiffs that "voluntary, non-binding, post-hoc actions by the government" do not alter the conclusion that the language of the PMG Policy is facially invalid. *See* Pls.' Opp'n at 1. The plaintiffs assert that the defendants' motion for reconsideration "is a classic argument that the case has become moot, regardless of how the Defendant captions the argument." *Id.* While the defendants maintain that they are not arguing that the CNORs render the plaintiffs' claims moot, *see* Reply at 1–2, they are alleging that the CNORs now correct any infirmities caused by the "redundancy" language in the PMG Policy that were identified by the Ninth Circuit and this Court. Their position is therefore analogous to a mootness argument because the defendants are essentially asserting that their current treatment of public petitions, as evidenced by the two recent CNORs, remedy all of the deficiencies pointed out by the Ninth Circuit and this Court with respect to the impact the PMG Policy's redundancy language was having on the manner in which the FWS had been treating public petitions. Thus, cases that have analyzed the application of the mootness doctrine are instructive in

already stated in its Memorandum Opinion that

> the Secretary must show that she is 'actively working on other listings and delistings and must determine and publish a finding that such other work has resulted in pending proposals which *actually* preclude[d][her] proposing the petitioned action at that time.' For that reason, 'the Secretary must determine and present evidence that [s]he is, in fact, making expeditious progress in the process of listing and delisting other species.'

*Am. Lands,* 242 F.Supp.2d at 17 (quoting *Ctr. for Biological Diversity,* 254 F.3d at 838 (emphasis added)). The FWS's two recent CNORs simply provide a brief explanation about why each particular species is warranted for listing and then conclude that all of these species are collectively precluded by other higher priority listing proposals, which are mainly comprised of court orders and settlement agreements. The concern that this Court has is that by lumping all of the species that are "warranted but precluded" into one finding (*i.e.,* a Candidate Notice of Review), the FWS is failing to individually address why each specific species is precluded, which the petition process arguably requires. *See, e.g.,* 60 Fed.Reg. 15,281, 15,283 (March 23, 1995) ("12–Month Finding for a Petition to List the Southern Rocky Mountain Population of the Boreal Toad as Endangered" specifically detailed the reason why this species was "warranted but precluded" and indicated that there were "three candidate species in Colorado that appear to be more in need of listing, thus precluding the listing of the southern Rocky Mountain population of the boreal toad." The Secretary went on to discuss and list the mountain plover, the Preble's meadow jumping mouse, and a plant named Phacelia submutica, as having higher listing priorities.). Individualized preclusion assessments may be necessary because species that are designated for potential ESA listing are assigned to a Region and each Region is allocated a certain amount of funds for ESA listing. The 12–month "warranted but precluded" finding regarding the Southern Rocky Mountain Population of the Boreal Toad, which the Ninth Circuit in *Ctr. for Biological Diversity* identified as an example of what such a finding should entail, 254 F.3d at 838–39, listed three higher priority species that were all located in the same state and thus the same Region. Here, the CNORs did not utilize an individualized "warranted but precluded" assessment with respect to the Regions where the species at issue are located, but simply conclude that a number of species are precluded by a number of higher priority species that are situated throughout the nation. Particularly troubling is that this list of higher priority species is mainly comprised of species that were the subject of earlier court orders and settlement agreements. While the various species that were the subject of the earlier court orders and settlement agreements may be entitled to a priority greater than the species at issue in this case, classifying degrees of endangerment solely on when court orders were issued or settlements were reached does not seem to this Court to ensure that species that are most at risk will be given proper consideration for listing.

determining what impact the CNORs have on the legality of the PMG Policy because the defendants are in effect stating that their voluntary cessation of their past invalid treatment of public petitions for listing species that had already been identified by the FWS for ESA listing moots the courts concerns about the "redundancy" language of the PMG Policy.

In *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), the Supreme Court denied the government's request to dismiss a constitutional challenge to an ordinance which had been repealed, finding that the repeal "would not preclude [the city] from reenacting precisely the same provision if the District Court's judgment were vacated." Similarly, the Eight Circuit has commented that "[o]ther courts have refused to dismiss cases where a governmental body discontinued a wrongful practice and promised not to resume it, since '[p]resent intentions may not be carried out,' and 'it is not certain that changes in leadership or philosophy might not result in reinstitution of the [challenged] policy.'" *United Food and Commercial Workers Int'l Union, AFL–CIO, CLC, v. IBP, Inc.,* 857 F.2d 422, 429–430 (8th Cir. 1988) (quoting *Phillips v. Pa. Higher Educ. Assistance Agency,* 657 F.2d 554, 569–70 (3d Cir.1981), *cert. denied,* 455 U.S. 924, 102 S.Ct. 1284, 71 L.Ed.2d 466 (1982)).

Here, not only has the FWS failed to repeal or amend the "redundancy" provision of the PMG Policy, but in its two recent CNORs it continues to affirmatively acknowledges the validity of this Policy. *See* 66 Fed.Reg. at 54,814 ("Under our Petition Management Guidance ... we consider a petition to list a species already on the candidate list to be a second petition and, therefore, redundant. We do not interpret the petition provisions of the Act to require us to make a duplicative finding.

Therefore, we are not making additional 90–day findings or initial 12–month findings on petitions to list species that are already candidates."); 67 Fed.Reg. at 40,-664 (same). As mentioned above, the Court concluded in its January 30, 2003 Memorandum Opinion that the PMG Policy was facially invalid because the language of the Policy treats public petitions as "redundant" of the FWS's internal listing efforts, thereby having the effect of *permitting* the FWS to ignore their mandatory obligations to comply with 16 U.S.C. § 1533(b)(3)(B). The Court's concerns regarding the fact that the language of the PMG Policy permits the FWS to avoid its mandatory obligations under 16 U.S.C. § 1533(b)(3)(B) are based on the FSW's prior repeated attempts to avoid compliance with this statute. As indicated in this Court's earlier Memorandum Opinion, "this case is one in a number of cases in which the defendants have set forth arguments about why they do not have to comply with the petition process's requirements." *Am. Lands,* 242 F.Supp.2d at 17 n. 13 (citing *Biodiversity Legal Found. v. Badgley,* 284 F.3d 1046, 1055 (9th Cir. 2002) (rejecting defendants' position that 90–day determination can be postponed indefinitely if not practicable and finding that both 90–day and 12–month findings "must be made within one year."); *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1181 (10th Cir.1999) (rejecting Secretary's argument that spending moratorium imposed by Congress made it impossible to meet ESA deadlines and finding that Secretary failed to comply with "mandatory, nondiscretionary duty unambiguously imposed by the ESA"); *Biodiversity Legal Found. v. Babbitt,* 63 F.Supp.2d 31, 32 (D.D.C. 1999) (finding that "it was unlawful for FWS to wait nearly two years before issuing its [90–day] preliminary finding."); *but see Biodiversity Legal Found. v. Babbitt,* 146 F.3d 1249, 1252 (10th Cir.1998) (find-

8

ing that Secretary had adequately demonstrated impracticability of issuing 90–day preliminary finding due to Congressional funding moratorium); *Envtl. Def. Ctr. v. Babbitt,* 73 F.3d 867, 872 (9th Cir.1995) (finding that Secretary failed to comply with nondiscretionary duty to make 12–month finding, but excusing compliance until appropriated funds from Congress were available)). There is nothing to prevent the defendants from returning to the position it has repeatedly taken in the past. Thus, mootness law precedent causes the Court to find that it must reject the FWS's claim that its voluntary compliance with the requirements of 16 U.S.C. § 1533(b)(3)(B) by publishing its two recent CNORs renders the relief sought by the plaintiffs regarding the PMG Policy unnecessary.

Accordingly, it is hereby this ___ day of May, 2003

**ORDERED** that the Defendants' Motion for Reconsideration of its January 30, 2003 Order requiring the FWS to issue a 12–month finding pursuant to 16 U.S.C. § 1533(b)(3) is **GRANTED** and the Court will therefore **VACATE** this requirement. It is

**FURTHER ORDERED** that the Defendants' Motion for Reconsideration of its January 30, 2003 ruling that the FWS's PMG Policy that treats a public petition to list a species under the ESA as "redundant" if the species has already been identified as a "candidate" for listing under the FWS's internal process violates 16 U.S.C. § 1533(b)(3)(B) is **DENIED.**